2023-1550

In The

# United States Court of Appeals for the Federal Circuit

RISEN ENERGY CO., LTD.,

        Plaintiff-Appellant,

TRINA SOLAR CO., LTD., ET AL.,

        Plaintiffs,

CANADIAN SOLAR INC., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (CHANGSHU), INC., CANADIAN SOLAR MANUFACTURING (LUOYANG), INC., CSI CELLS CO., LTD., CANADIAN SOLAR (USA), INC.,

        Plaintiffs-Appellees,

v.

UNITED STATES,

        Defendant-Appellee,

SUNPOWER MANUFACTURING OREGON, LLC

        Defendant.

Appeal from the United States Court of International Trade in
No: 1:20-cv-03743, Judge Claire R. Kelly.

**REPLY BRIEF OF PLAINTIFF-APPELLANT RISEN ENERGY CO., LTD.**

Gregory S. Menegaz
Alexandra H. Salzman
**DeKieffer & Horgan, PLLC**
1156 Fifteenth Street, NW, Suite 1101
Washington, DC 20005
(202) 783-6900
*Counsel for Plaintiff-Appellant*         September 7, 2023

FORM 9. Certificate of Interest  Form 9 (p. 1)
  March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 2023-1550

**Short Case Caption** Risen Energy Co., Ltd. v. US

**Filing Party/Entity** Plaintiff-Appellant Risen Energy Co., Ltd.

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 09/07/2023        Signature: /s/ Gregory S. Menegaz

                        Name: Gregory S. Menegaz

FORM 9. Certificate of Interest                                                          Form 9 (p. 2)
                                                                                          March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Risen Energy Co., Ltd. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐　Additional pages attached

FORM 9. Certificate of Interest                                     Form 9 (p. 3)
                                                                    March 2023

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable        ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☑ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable        ☐ Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................1

I.  Commerce's Surrogate Value HTS Classification for Backsheet and EVA are Unsupported by Substantial Evidence................................................1

II. Commerce's Surrogate Financial Ratio Calculation was Not Supported by Substantial Evidence................................................................6

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ...............................12

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) ...................... 5

*Burlington Truck Lines v. United States*, 371 U.S. 156 (1962) ................................ 5

*Shakeproof Assembly Components v. United States,* 268 F.3d 1376 (Fed. Cir. 2001) ................................................................................................................... 11

**Statutes**

19 U.S.C. § 1677b(c) ................................................................................................ 5

**Other Authority**

International Financial Reporting Standards Foundation, IAS 2 Inventories, About, <https://www.ifrs.org/issued-standards/list-of-standards/ias-2-inventories> ................................................................................ 8

International Financial Reporting Standards Foundation, About, <https://www.ifrs.org/about-us/who-we-are/ ............................................. 10

## INTRODUCTION

This brief is filed on behalf of Plaintiff-Appellant Risen Energy Co., Ltd. ("Risen" or "Plaintiff-Appellant") in reply to the brief filed by Defendant-Appellee United States (U.S. Br.).

## ARGUMENT

**I. Commerce's Surrogate Value HTS Classification for Backsheet and EVA are Unsupported by Substantial Evidence.**

The United States' argument in response to Risen's brief is essentially that the ASTM abstracts include technical definitions of film compared to sheet, and thus Commerce's HTS classification of these inputs is reasonable and supported by the record. The United States says the ASTM abstracts "provide a clear technical definition of film" and clearly distinguish film and sheet based on thickness. U.S. Br. at 17, 21, 27. However, this completely misinterprets the ASTM abstracts. The ASTM abstracts are <u>not</u> about defining sheet compared to film. One is a guide for measuring plastic and the other defines the specifications of a particular type of plastic.

More specifically, the first standard, ASTM D6988, is entitled "Standard Guide for Determination of Thickness of Plastic Film Test Specimens." The standard is a "guide" for <u>measuring</u> the thickness of plastic films where the thickness is used to test for various properties. **Appx7418**. The guide merely

1

notes that "film" is an "*optional* term for sheeting having a nominal thickness no greater than 0.25 mm." **Appx7418** (emphasis added). The guide is not about defining a film compared to a sheet, but is about how to measure the thickness of plastic. The second standard, ASTM D4801 is entitled "Standard Specification for Polyethylene Sheeting in Thickness of 0.25 mm (0.010 in.) and Greater." *Id*. This describes the standard for a very particular type of extruded and compression-molded sheeting made from low-, medium-, high-density polyethylene and copolymers that has a thickness of 0.25mm. This is not the same product as EVA or Backsheets. The abstract does not discuss that all polyethylene sheets must be over 0.25mm or anything about the terms "film" versus "sheet." This is merely the specification for that particular product, which is not the same product as used by Risen or in the solar industry at all for that matter.

    Neither of these specifications pretend to define the difference between the term sheet and film. Nonetheless, the United States' brief argues that these ASTM abstracts are technical definitions. This is clearly not supported by the titles or abstract themselves, as explained above. Contending that a "precise definition is critical," the United States continues on that the ASTM abstracts provide this definition, submitting that the information provided by Risen does not. U.S. Br. at 20-21.

The United States dismisses Risen's arguments that both inputs are flexible films, and not sheets, submitting that Commerce's definition is not about rigidity but about thickness. Commerce's justification for its HTS classification of these inputs did originally consider flexibility, hence Risen's inclusion of this point. Risen Opening Br. at 15-16. Nonetheless, the information Risen submitted on the record also addresses the thickness of solar EVA film and solar backsheet film—namely the use of the term film for the precise inputs Risen used and in the solar industry generally. Specifically, Risen provided information from its own EVA supplier as well as various solar manufacturers or groups describing the EVA and backsheet used in the solar industry (including 3M, a worldwide and Malaysian manufacturer) in the exact same way as Risen—i.e., as "film." The United States contends these are not technical definitions, but again, the ASTM abstracts are also not technical standards for the inputs in question or for a more general definition of plastic sheet compared to film.

The United States characterizes the information provided by Risen as "marketing materials" or "product packaging" as if that made it less informative, but this information is concrete evidence of terminology used in the very industry in question for selling and buying the precise inputs in question. The HTS being debated are used for import statistics after all—i.e. the result of selling and buying

3

in the market.

Further, the United States also faults this information by stating "there is no evidence that the terms used in the marketing materials correspond to the terms 'sheet' and 'film' in the Malaysian HTS. U.S. Br. at 19. Of course, there is no evidence that Commerce's definition of sheet compared to film, or the ASTM abstracts supposed definition, correspond to terms in the Malaysian HTS. Risen has demonstrated that the solar industry, including a Malaysian manufacturer of solar EVA and solar backsheet, uses the term "film" for these products. This is reasonably more informative of the use of this term when a Malaysian solar company is importing these products.

In Commerce's original determination, it created an arbitrary definition of sheet compared to film. Risen Opening Brief at 14-16 (discussing Commerce's original definitions and that they contradict Commerce's HTS selections in prior reviews). On remand, Commerce attempted to backfill this definition with support from the ASTM abstracts, but as explained above, these ASTM abstracts do not actually define plastic sheet compared to film, much less do they define solar EVA or solar backsheet film. As seen in the United States' brief, Commerce desires a concrete specific definition difference between film and sheet, but the record does not actually contain such evidence.

4

Nonetheless, Commerce must rely upon the best available information to value these inputs; not merely any reasonable argument for the definitions. *See* 19 U.S.C. 1677b(c)(1)(B). Congress used the extreme superlative "best" uniquely in the section of the statute dealing with constructed normal value in NME cases like this one. In other words, Commerce does not have discretion to use any merely "reasonable" choice among reasonable data alternatives. Rather, Commerce must establish, supported by substantial evidence on the record, that its choice is the "best" information on the record for the valuation of that factor.

The information provided by Commerce does not define plastic film compared to sheet and is not related to the solar industry or Malaysia. Surely, the terms used in the actual industry, by Risen itself and the other manufacturer information placed on the record, are the most informative "best available information" for that industry. The record taken as a whole, including the information most specific to Risen's purchases, supports a finding that these inputs are films. *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962) (The agency must "articulate any rational connection between the facts found and the choice made."); *Atlantic Sugar, Ltd.*, 744 F.2d at 1562 (Commerce is obligated to support its determination based on the record as a whole, including whatever "fairly detracts" or is "evidenced opposed to its view." ). Therefore, the "best

available" information to value Risen's backsheet input is HTS 3920.62.90.00 and Risen's EVA input is HTS 3920.10.9000, both of which include "film".

Lastly, the United States claims that Risen's final argument made in its opening brief on averaging the two HTS lacks merit. U.S. Br. at 30-31. Risen concluded its argument that alternatively, if the record is truly ambiguous as to whether these inputs are films or sheets, then the best available information would be to average the two HTS. The United States claims this argument was not developed before the trial Court and therefore is forfeited. *Id*. Risen did raise this argument before Commerce and the trial Court after remand, though very briefly. This is the logical alternative argument built upon all prior argumentation that Risen's proffered information is informative and that Commerce's proffered information is not controlling. The point is properly raised before this Court.

## II. Commerce's Surrogate Financial Ratio Calculation was Not Supported by Substantial Evidence.

As explained in more detail in the opening brief, when calculating financial ratios, Commerce will take the "Cost of Sales" or "Cost of Goods Sold" ("COGS") line item from the Profit & Loss statement and subtract various detailed costs from the notes of the financial statement that would be included as a COGS item and then allocate the remaining COGS to a particular type of expenses. Commerce typically allocates this COGS remaining value to the "Materials Labor Energy"

6

("MLE") denominator. In this case, Commerce allocated the remaining "Cost of Sales" to the overhead costs, arguing the MLE costs had already been accounted for in the inventories line item note. This allocation is contrary to the notes of the statement and accounting principles. There is a double effect where this increases the numerator expense and decreases the base overwhich it is divided (i.e., the MLE denominator).

The United States' argument perpetuates the same error that the lower court made in not understanding the definition of inventories, whether using an IFRS standard or other internationally recognized accounting standards. Moreover, it still stands that these various arguments over IFRS standards and cost accounting of inventories were critically not part of Commerce's actual decision, but rather arose in briefing and oral argument when Commerce itself raised IFRS definitions not on the record in defense of its ratio calculation. This has made briefing at the Court more cumbersome as parties, including Commerce, were never afforded the opportunity to directly address these detailed IFRS standards and information before the agency itself. This alone should require remand to Commerce to consider as it is an agency role to do in the first instance on all issues.

The United States reiterates throughout its brief that, as seen in note 2.12 and 17 and its citation to the IFRS standards, that the inventory costs include material

costs, labor, and energy costs. U.S. Br. at 32-39. What the United States fails to understand is that inventory costs do not include **all** material costs, labor, and energy costs. This is demonstrated by the very basic fact that if the inventories figure included all of the costs to produce goods during the year, it would match the Cost of Goods Sold ("COGS") total. However, the inventories expense item of RM 1,648 million is not the same as the COGS total of RM 2,003 million.

The fact that inventory costs do not include all MLE costs is also highlighted by the fact that the note is about inventories and not the cost of manufacturing (or COGS). Inventories and cost of manufacturing are not the same, whether using IFRS or any accounting standard. Inventory is the raw materials, work in progress (WIP"), and finished goods that the company has in inventory while COGS is the direct costs associated with the production of the goods sold. As defined by IFRS, the "cost of inventories includes all costs of purchase, costs of conversion (direct labour and production overhead) and other costs incurred in bringing the inventories to their present location and condition." *See* https://www.ifrs.org/issued-standards/list-of-standards/ias-2-inventories; *see also* U.S. Br. at 36 (where the United States cites to this source and definition). In other words, the RM 1,648 million inventories line item is for items in inventory at the time of financial reporting. Per the financial statement notes and IFRS, the

cost of inventory would indeed include labor and production costs—but obviously only for WIP and finished goods in inventory. There would not be labor, energy, or production costs for raw materials in inventory. Likewise, for products the company produced that are not in inventory, the costs of that production would not be included as this inventories note suggests. Risen does not contest that the inventories note includes labor and energy costs, but rather has demonstrated that Commerce is incorrect that the labor or energy included in this note is <u>all</u> manufacturing labor and energy costs. The labor and any energy costs included in this figure would only be for WIP and finished goods inventory.

The United States misunderstands Risen's arguments when it states that the remaining Cost of Sales costs (RM 257,063) are too small to constitute Hanwha's energy costs. U.S. Br. at 36. Risen is not arguing that the remaining Cost of Sales equals the company's energy costs. Rather, Risen has argued that Commerce's understanding of this inventories note is incorrect. This note does not allow Commerce to segregate out MLE expenses from overhead expenses in the COGS. The only factory overhead clearly identified in the Hanwha financial statements is depreciation and only this amount can be deducted from the COGS when determining the proper amount for the MLE denominator. Commerce's

ratio calculation is incorrect and overstates overhead costs while understating the MLE denominator.

Moreover, to the extent that the United States dismisses citations to other cases discussing financials and the other financials on this record as not relevant because Hanwha uses IFRS standards, the IFRS is extremely common. IFRS is actually the most widely used standard globally. https://www.ifrs.org/about-us/who-we-are/ ("The Standards have become the de facto global language of financial statements."). Indeed, the other Malaysian financials relied upon by Risen as establishing Commerce practice on this calculation have been prepared and audited in compliance with IFRS. **Appx 3606**, **Appx3509**, **Appx3680**, **Appx3893**.

Thus, it is particularly relevant that Risen has corroborated its argument that Commerce overstated overhead costs in this incorrect ratio calculation with an analysis of the other Malaysian financial statements on the record. As explained in the opening brief, among the other four Malaysian financial statements on the record, the manufacturing depreciation costs represented 96% of the overhead costs. *See* Risen Reply Brief at Attachment 1 (analyzing the overhead costs in the record Malaysian statements); **Appx7345**. But Commerce's calculation of Hanwha's ratios presumes that depreciation is only 28.03% of the total overhead

costs. *Id*. Therefore, the record only supports Risen's argument that the majority of the overhead costs have already been assigned to the overhead numerator and thus the remaining COGS is primarily MLE denominator expenses.

In sum, the inventories line item does not allow Commerce to segregate out MLE expenses from overhead expenses in the COGS for Hanwha's financial ratios. Commerce has calculated inaccurate ratios not based on substantial evidence, resulting in an inaccurate margin. *Shakeproof Assembly Components v. United States,* 268 F.3d 1376, 1382 (Fed. Cir. 2001) (Above all, the statute requires Commerce to "establish[ ] antidumping margins as accurately as possible."). Accordingly, the Court should find its ratio calculation is not supported by substantial evidence and is not the "best available information" for Risen's surrogate financial ratio costs.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

In light of the foregoing, Plaintiff-Appellant requests that this Court enter judgment in its favor and find Commerce's determination of the best available information for backsheet and EVA and Commerce's financial ratio calculation are not supported by substantial evidence.

                                                  Respectfully submitted,

                                                  /s/ Gregory S. Menegaz
                                                  Gregory S. Menegaz
                                                  Alexandra H. Salzman
                                                  **DEKIEFFER & HORGAN, PLLC**
                                                  1156 Fifteenth Street, NW Suite 1101
                                                  Washington, DC 20005
                                                  (202) 783-6900
                                                  *Counsel for Plaintiff-Appellant*

September 7, 2023

FORM 19. Certificate of Compliance with Type-Volume Limitations    Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1550

**Short Case Caption:** Risen Energy Co., Ltd. v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes __2,398__ words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 09/07/2023    Signature: /s/ Gregory S. Menegaz

Name: Gregory S. Menegaz